UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| James Buechler, individually and on behalf of all others similarly situated, | 1:22-cv-02717 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Albertsons Companies, Inc., | Jury Trial Demanded |
| Defendant | |

James Buechler ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Albertsons Companies, Inc. ("Defendant") manufactures, labels, markets, and sells slices of pasteurized processed Gouda cheese product purporting to get its smoked taste and darker color entirely from being smoked, under its Lucerne brand ("Product").



**I.   SMOKING PROCESS**

2.   Smoking is a processing method to preserve or improve the flavor of food by exposing it to smoke, usually from burning wood.

3.   The drying action of the smoke and the different phenol compounds helps to preserve protein-rich foods such as meat, cheese, almonds, and fish.

4.   The origins of smoking date to prehistory, as nomadic peoples experimented with fire and primitive cheese products.

5.   The earliest record of smoked cheese comes from ancient Rome, when an owner of a cheese shop was forced to share space in the *macellum* with a baker.[1]

6.   The baker's wood burning fire imparted a distinct flavor to the cheese, which varied based on the type of wood that was used.

7.   For example, wood chips from deciduous hardwood trees of the genus *Carya* – provide hearty and sweet flavors to cheese and meat ("hickory").

8.   Pecan wood, a type of hickory, gives cheese a spicy and nutty taste.

9.   Oak provides smoked flavors of moderate intensity.

10.   During the second half of the 20th century, the popularity of smoking decreased due to the prevalence of "smoke flavor," which is smoke condensed into a liquid form.[2]

11.   While "smoke flavor" may be convenient, it fails to supply the rich, layered combination of phenols and other odor-active compounds compared to where a food's taste is derived entirely from being smoked over wood.

12.   In the past two decades, consumers have increasingly embraced smoked foods, as

---

[1] *Macellum* is the Italian name for the farmer's markets of ancient Roman that sold freshly made foods.
[2] Matthew Sedacca, Liquid Smoke: The History Behind a Divisive Culinary Shortcut – Barbecue's love/hate relationship with the manufactured flavor, Eater.com, Jun 15, 2016.

2

made without advanced chemistry and synthetic additives.

13. Cheese industry observers confirm that "smoked cheeses are on the rise," as "[p]eople are seeking bigger flavors, bolder flavors, deeper flavors."[3]

## II. CONSUMERS VALUE FOODS WITHOUT ADDED FLAVORING

14. According to research by Mintel, consumers are increasingly seeking foods that get their taste only from a characterizing ingredient or a natural processing method.

15. Mintel reports that consumers are increasingly aware of the lack of transparency in the flavor industry, regularly highlighted by non-profits such as the Environmental Working Group ("EWG").[4]

16. The EWG often identifies foods with "natural" flavors, but which also contain "incidental" additives such as emulsifiers and solvents, which may pose health or nutritive risks.

17. The European Food Safety Authority ("EFSA") reported that many smoke flavorings added to foods contain compounds at levels which may pose a toxic risk when consumed.[5]

18. Innova Market Insights posited that "no added flavor" may be an emerging consumer trend.[6]

19. This trend is unique because it is not based on an affirmative statement or "claim," but by the absence of a front label statement which is required to inform consumers that a food's taste comes, at least in part, from something *added*.

---

[3] Kimberly L. Jackson, Smoked cheese: Growth stoked by demand for bolder flavors, Newark Star-Ledger, Dec 30, 2014, Updated Mar 29, 2019.

[4] Lynn Dornblaser, Director, Innovation & Insight, Mintel, Clean Label: Why this trend is important now, 2017.

[5] Faizah Ahmed, Smoke-Flavored Foods May Be Toxic, Food Safety News, Feb. 16, 2010.

[6] Innova Market Insights, Flavors: Trends and Sustainability, Sept. 2018.

### III. STATE AND FEDERAL REGULATIONS REQUIRE ADDED SMOKED FLAVOR TO BE DISCLOSED ON FRONT LABEL

20. Federal labeling regulations, adopted by this State, require a food's front label disclose the source of any characterizing or main flavor. 21 C.F.R. § 101.22(i).[7]

21. According to one commentator, this rule "is premised on the simple notion that consumers value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two. This consumer protection objective is relevant to taste claims conveyed in advertising as well."[8]

22. Federal and state regulations require that:

> (i) If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake", and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake".

21 C.F.R. § 101.22(i)(1)(i).

23. The FDA has warned companies that fail to accurately inform consumers of foods which are not smoked but only have added smoke flavor:

> If these smoke ingredients [natural smoke flavor] are added flavors, they should be declared in accordance with 21 CFR 101.22 [on the front of the label]; however, if these ingredients describe the smoking process, then they must not be listed as ingredients in the ingredient statement.[9]

24. When the FDA enacted the regulations for flavoring, they considered it misleading

---

[7] Maryland has adopted regulations identical to the Federal Food Drug and Cosmetic Act and its accompanying regulations. *See* Md. Code, HG § 21-201, *et seq.* ("Maryland Food, Drug, and Cosmetic Act").
[8] Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, August 11, 2006.
[9] FDA Warning Letter, Smoked Seafood, Inc. dba Little Mermaid Smokehouse, MARCS-CMS 515739 — JUNE 27, 2017.

to describe a food as "smoked" when "true smoke is absorbed in a liquid or other medium, and that medium is added to a food to provide a smoke flavor."

25. In this circumstance, the front label should state, "with added smoke flavor," "[with] natural smoke flavor," or "flavor added."

26. The addition of smoke flavor to cheese was considered significant enough to warrant a specific regulation, entitled, "Spiced, flavored standardized cheeses." 21 C.F.R. § 133.193.

27. Since Gouda is a standardized cheese, the name of a Gouda cheese with added smoke flavoring is required to be identified with "a declaration of any flavor and/or spice that characterizes the food, in the manner prescribed in § 101.22 of this chapter." 21 C.F.R. § 133.193(b); 21 C.F.R. § 133.142 ("Gouda cheese").

28. Federal and state regulations prescribe definitions for processed cheeses which are based on the standardized cheeses, such as pasteurized process cheese and pasteurized process cheese food. 21 C.F.R. § 133.169 and 21 C.F.R. § 133.173.

29. The differences from the standardized cheeses may include fat and moisture content, and additional ingredients such as emulsifying agents.

30. Like standardized cheeses, the front label of pasteurized process cheese and pasteurized process cheese food is required to contain "a declaration of any flavoring, including smoke and substances prepared by condensing or precipitating wood smoke, that characterizes the product as specified in § 101.22." 21 C.F.R. § 133.169(f) and 21 C.F.R. § 133.173(g).

31. Defendant's slices of pasteurized processed Gouda cheese product is not covered by any cheese standards or regulations, which means its fat and moisture content can be lower than pasteurized process cheese and pasteurized process cheese food.

32. However, the Product is still required to comply with the requirement that its front

label disclose the source of its characterizing smoke flavor on its front label, such as "with added smoke flavor," "[with] natural smoke flavor," or "flavor added." 21 C.F.R. § 101.22(i).

### IV. THE PRODUCT'S LABELING IS MISLEADING

33. The Product's representation that it is "Smoked" instead of getting its smoked taste from added smoke flavor violates 21 U.S.C. § 343(a)(1), which deems a food misbranded when the label contains a statement that is "false or misleading in any particular."

34. Maryland has adopted and incorporated the Federal Food Drug and Cosmetic Act ("FFDCA") and its accompanying regulations. *See* Md. Code, HG § 21-201, *et seq.* ("Maryland Food, Drug, and Cosmetic Act"); Md. Code, HG § 21-210.

35. Whether a food has not been subject to any smoking, or merely to some smoking, and where its taste is entirely or partially from added liquid smoke flavoring is basic front label information consumers rely on when making quick purchasing decisions at the grocery store.

36. The front label does not disclose that the Product's smoked flavor is from liquid smoke, prepared by pyrolysis of hardwood sawdust, instead of being smoked over hardwoods.

37. Varieties of gouda cheese and gouda cheese products that get their smoked taste exclusively or even mostly from being smoked are not rare or pricy delicacies that would make a reasonable consumer "double check" the absence of added smoke flavor by scouring the label.

38. These products exist in the marketplace and are not technologically or otherwise unfeasible to produce.

39. For example, the below products of "Smoked Gouda" and "Hickory-Smoked Gouda" are labeled identically to Defendant's with respect to the source of their smoked flavor, even though the former are smoked over hardwood, while the latter's taste is from added liquid smoke.

 

40. The result is that consumers seeking Gouda cheese and Gouda cheese products are misled by products that appear identical, even though they are not equal in quality.

41. Where Gouda (1) may have undergone *some* smoking but has a stronger and enhanced smoke taste from added smoke flavor or (2) has not been subject to any smoking and gets all its smoked taste from added smoke flavoring, almost all companies – but not Defendant – truthfully represent this by the required front label disclaimer, "with Natural Smoke Flavor."

Smokehouse Gouda – Gouda Natural Cheese with

Natural Smoke Flavor



42. Defendant fails to disclose the addition of smoke flavor on the front and relegates this information to the back label ingredient list.

> **INGREDIENTS:** CULTURED PASTEURIZED MILK AND SKIM MILK, WHEY, CREAM, SODIUM CITRATE, CORN STARCH, LESS THAN 2% ENZYMES, SALT, ANNATTO COLOR, SODIUM PHOSPHATE, GUAR GUM, SORBIC ACID (TO PROTECT FLAVOR), NATURAL SMOKE FLAVOR.

43. "NATURAL SMOKE FLAVOR" is smoke condensed into a liquid form.

44. Consumers are misled because the absence of required, qualifying terms, i.e., "natural smoke flavored," "smoke flavored," or "with natural [added] smoke flavor," gives them the false impression that the Product's smoked attributes, including taste and color, are imparted

by smoking, when this is false. 21 C.F.R. § 101.22(i)(1)(i).

45. The added smoke flavor further misleads consumers by darkening the Product, giving the impression it was smoked longer than it was.

46. While "[N]aturally smoked cheeses will have a bright yellow to brown color as a result of the heat, smoke and some drying of the cheese," Defendant adds "ANNATTO COLOR," which imparts the darker color associated with cheese products that are smoked over hardwoods.

47. While it is permitted to add annatto color, this is misleading because it misrepresents the quality and attributes of the Product.

48. Even consumers who are "double check" the ingredients and see "NATURAL SMOKE FLAVOR" are not be informed that the Product is not smoked.

49. The 400 flavor compounds which contribute to a "smoked taste" include pyrazines, aromatic hydrocarbons, alcohols, organic acids, esters, furans, phenols, carbonyl and noncarbonyl compounds, and various oxygen- and nitrogen-containing heterocyclic compounds.

50. Added smoke flavor cannot impart the taste of real smoking for several reasons.

51. First, added smoke flavoring lacks the delicate balance of phenolic compounds, including 2,3-Butanedione, 2,3-Pentanedione, 3-Butanoic acid, 3-Methylbutanoic acid, 4-Ethylguaiacol, 4-Propylguaiacol and/or 4-Vinylguaiacol.

52. Second, the smoke generation process influences the wood-smoke chemical composition, generating compounds that are not capable of being included in a "natural smoke flavor," like trans-isceugenol and 4-methylsyringol.

53. When foods like Gouda are exposed to volatiles and particulate matter found in smoke, they undergo chemical reactions which form new flavor compounds.

54. Third, certain compounds only serve as intermediates in the formation of more stable

9

forms of compounds which are essential to the aroma of smoke.

55. Fourth, in most systems involving only smoke generation instead of smoking food, there is only a focus on volatile compounds which are believed to have distinctive odor properties at low concentrations.

56. This overlooks that nonvolatile compounds significantly contribute to smoke flavor.

## V. CONCLUSION

57. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

58. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

59. Had Plaintiff and proposed Class Members known the truth, they would not have bought the Product or would have paid less for it.

60. The Product is sold for a price premium compared to other similar products, no less than $3.99 per 8 oz (X slices), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

### Jurisdiction and Venue

61. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

62. The aggregate amount in controversy exceeds $5 million, including sales, statutory and punitive damages, injunctive relief, and attorney's fees, exclusive of interest and costs.

63. Plaintiff is a citizen of Maryland.

64. Defendant is a citizen of Delaware and Idaho.

65. The class of persons Plaintiff seeks to represent includes persons who are citizens of

different states from which Defendant is a citizen.

66. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here for several years, from Defendant's stores and online in the States covered by Plaintiff's proposed classes.

67. Venue is in this District and with assignment to the Northern Division because a substantial part of the events or omissions giving rise to the claims occurred in Baltimore County and Anne Arundel County, including Plaintiff's purchase and consumption of the Product, exposure to and reliance on the representations, and his awareness that they were misleading.

Parties

68. Plaintiff James Buechler is a citizen of Baltimore, Maryland, Baltimore County.

69. Defendant Albertsons Companies, Inc. is a Delaware corporation with a principal place of business in Boise, Idaho, Ada County.

70. Defendant operates the over 900 Safeway grocery stores in the United States.

71. Safeway stores are located in Alaska, Arizona, California, Colorado, Delaware, District of Columbia, Hawaii, Idaho, Maryland, Montana, Nebraska, Nevada, New Mexico, Oregon, South Dakota, Virginia, Washington, and Wyoming.

72. The Lucerne brand of dairy products is Defendant's oldest brand which its customers have trusted for quality dairy products for over 115 years.

73. Items sold under the Lucerne brand are equivalent to, and typically exceeds, their national brand competitors in quality.

74. Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at locations including Safeway, 7643 Arundel Mills Blvd, Hanover, MD 21076, in 2020, among other times.

75. Plaintiff saw and relied on the front label that said, "Smoked Pasteurized Processed Gouda Cheese Product," and noticed there was no mention of added smoke flavor.

76. Plaintiff expected that the Product's smoke taste and flavor, and other smoked attributes, such as its darker color, was entirely from being smoked over fire and hardwood.

77. Plaintiff had no reason to know the Product was not subject to any smoking or less smoking.

78. Plaintiff wanted more than a smoky taste but a product that was smoked over hardwood, so that its taste and color did not need so much, or any, added "natural smoke flavor."

79. Plaintiff bought the Product at or exceeding the above-referenced price.

80. Plaintiff paid more for the Product than he would have paid had he known of the issues described here, and would not have purchased it or would have paid less.

81. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

82. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance its representations are consistent with its attributes and/or composition.

83. Plaintiff is unable to rely on the labeling of not only this Product, but other similar products promoting their smoked attributes, because he is unsure of whether their representations are truthful and complete.

## Class Allegations

84. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Maryland Class**: All persons in the State of Maryland who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Alaska, Arizona, District of Columbia, Hawaii, Idaho, Montana, Nebraska, Nevada, New Mexico, South Dakota, and Wyoming, who purchased the Product during the statutes of limitations for each cause of action alleged.

85. Common questions of law or fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and the Class are entitled to damages.

86. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

87. Plaintiff is an adequate representative because his interests do not conflict with other members.

88. No individual inquiry is necessary since the focus is only on Defendant's practices and the Class is definable and ascertainable.

89. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

90. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect Class Members' interests adequately and fairly.

91. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Maryland Consumer Protection Act ("MCPA"), Commercial Law Art., Md. Ann. Code, § 13-101, *et seq.*</u>

92. Plaintiff incorporates by reference all preceding paragraphs.

93. Plaintiff relied on the front label statement the Product was "Smoked," and expected its smoked attributes were entirely from being smoked.

94. Plaintiff and class members paid more for the Product and would not have purchased it or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(On Behalf of the Consumer Fraud Multi-State Class)

95. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

96. The members of the Consumer Fraud Multi-State Class were harmed in the same manner as Plaintiff, and reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statutes invoked by Plaintiff.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

97. The Product was manufactured, identified, distributed, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that its smoke taste, flavor, and other smoked attributes, such as a "smoked" darker, color, were entirely from being smoked over fire and hardwood.

98. Defendant directly marketed the Product to Plaintiff through advertisements and marketing in various forms of media including print circulars, direct mail, targeted digital advertising, and/or on the packaging.

99. Defendant knew product attributes that customers like Plaintiff were seeking, such as a product subject to some smoking to provide its smoked taste, instead of only having added smoked flavor, and developed its marketing and labeling to directly meet those needs and desires.

100. Defendant's representations were conveyed in writing and promised the Product

14

would be defect-free, and Plaintiff understood this meant that any smoke taste, flavor, and darker, color were entirely from being smoked over fire and hardwood.

101. Defendant's representations affirmed and promised that any smoke taste and flavor – and other smoked attributes, such as a "smoked," darker, color – were entirely from being smoked over fire and hardwood.

102. Defendant described the Product so Plaintiff believed that any smoke taste and flavor – and other smoked attributes, such as a "smoked," darker, color – were entirely from being smoked over fire and hardwood, which became part of the basis of the bargain that it would conform to its affirmations and promises.

103. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

104. This duty is based on Defendant's outsized role in this market, a trusted company, known for its high-quality Lucerne products, honestly marketed to consumers.

105. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

106. Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the express and implied warranties associated with the Product.

107. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

108. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

109. The Product was not merchantable because it was not fit to pass in the trade as

advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if any smoke taste and flavor – and other smoked attributes, such as a "smoked," darker, color – were entirely from being smoked over fire and hardwood.

110. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected that any smoke taste and flavor – and other smoked attributes, such as a "smoked," darker, color – were entirely from being smoked over fire and hardwood, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

Negligent Misrepresentation

111. Defendant had a duty to truthfully represent the Product, which it breached.

112. This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, custodian of the Lucerne brand, recognized for the highest quality dairy products.

113. The representations and omissions went beyond the specific representations on the packaging, and incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that Defendant and Lucerne have been known for.

114. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

115. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

116. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, his purchase of the Product.

### Fraud

117. Defendant misrepresented and/or omitted the attributes and qualities of the Product.

118. The records Defendant is required to maintain provided it with actual and/or constructive knowledge of the falsity and/or inaccuracy of the representations.

### Unjust Enrichment

119. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and the Class, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the Class;

2. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims, injunctive relief, and interest pursuant to the common law and other statutory claims;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated: October 21, 2022

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080

spencer@spencersheehan.com